UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RATNASIRI LIYANAGE-DON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NADIA LIYANAGE-DON, )<br>)<br>Defendant. ) | 1:25-cv-00461-SDN |

# ORDER

This matter comes before the Court on the Plaintiff's motion to remand and for attorneys' fees. On June 27, 2024, Mr. Ratnasiri Liyanage-Don ("the Plaintiff") sued his daughter, Ms. Nadia Liyanage-Don ("the Defendant"), in state court for $145,717.25 in unpaid loans for medical school, interest, and legal fees. ECF No. 1-2 at 5. On September 12, 2025, the Defendant filed her notice of removal to federal court. ECF No. 1. On October 8, 2025, the Plaintiff moved to remand the case back to state court and requested an award of $6,000 in attorneys' fees and costs based on the Defendant's removal. ECF No. 14. For the reasons that follow, the Plaintiff's motion is **GRANTED IN PART** with respect to remand and **DENIED IN PART** with respect to attorneys' fees.

**FACTUAL BACKGROUND**[1]

On June 27, 2024, the Plaintiff filed his first pro se complaint in state court. ECF No. 1-2 at 5. The face of the complaint identified the Plaintiff as a resident of Maine and stated he was suing his daughter, Ms. Nadia Liyanage-Don, in the amount of $145,717.25 for unpaid loans for medical school, interest, and legal fees. The pro se complaint did not

---

[1] The facts are derived from the parties' respective pleadings and evidence proffered in support of their arguments, including sworn affidavits provided to this Court. *See Bartell v. Liberty Mut. Pers. Ins. Co.*, No. 1:23-CV-00377, 2024 WL 1090308, at *1 n.1 (D. Me. Mar. 13, 2024).

1

state the Defendant's residence. Prior to obtaining counsel, the Plaintiff made multiple attempts to serve the Defendant at her last known residence and place of employment, both in New York City, New York. *Id.* at 126. After retaining counsel in November 2024, the Plaintiff again attempted service at multiple New York addresses on multiple occasions between December 2024 and March 2025. ECF No. 14-1 at 1–2.

## I. Facebook Message

Following this difficulty in achieving service through conventional means, the Plaintiff moved to allow for alternate service on the Defendant via the Defendant's Facebook account. ECF No. 1-2 at 126–28. On March 11, 2025, the state court granted the Plaintiff's motion, authorizing alternate service and ordering the Plaintiff to file proof of service within seven days of sending the Facebook message, "including screenshots documenting the delivery and, if available, receipt of the message." *Id.* at 136. On April 18, 2025, Plaintiff's counsel sent the Defendant a Facebook message and filed an affidavit of service with the state court, including a screenshot of the message showing an attachment titled "Summons – Complaint for Service.pdf." *Id.* at 137–39. The screenshot provided did not indicate that the message to the Defendant had been read and the Plaintiff did not file any additional documents indicating "receipt" of the message.

In her affidavit before this Court, the Defendant states she did not open the Facebook message from Plaintiff's counsel and was not aware of the contents of the message until September 5, 2025, when she first opened the message following instruction from her counsel[2]. ECF No. 16-1 at 2. The Defendant further states she is not

---

[2] The Defendant declares: "It is my understanding that Plaintiff and his counsel attempted to serve me with this lawsuit via Facebook Messenger. While I concede that I was sent correspondence from Plaintiff's counsel via Facebook Messenger in April 2025, I had no knowledge of that message until September 2, 2025 and did not open it until my attorney instructed me to do so on September 5, 2025." ECF No. 16-1 at 2.

2

Facebook friends with Plaintiff's counsel and rarely sees messages from strangers as Facebook directs them to a separate inbox containing mostly spam. *Id.*

## II.     June 18, 2025, Amended Complaint

On June 18, 2025, the Plaintiff filed a Motion to Amend Complaint and an Amended Complaint in state court. ECF No. 14-1 at 2. Neither party disputes the amended complaint is the first pleading in the case to explicitly allege complete diversity of citizenship, thus establishing federal diversity jurisdiction. ECF No. 14 at 4; ECF No. 16 at 7. On the same day, Plaintiff's counsel mailed copies of both the motion to amend and the amended complaint to the Defendant's New York address and obtained a USPS mailing receipt showing an estimated delivery date of June 23, 2025. ECF No. 14-1 at 3; *see* ECF No. 14-5. The Plaintiff's counsel states no mail from the Defendant's address was returned as undeliverable. ECF No. 14-1 at 3. The Defendant acknowledges she received the documents in the mail but states the envelope addressed to her contained only the motion to amend and did not contain a summons as required under both the applicable federal and state civil rules.[3] ECF No. 16-1 at 2; *see* Fed. R. Civ. P. 4; Me. R. Civ. P. 4. On July 30, 2025, the state court granted the Plaintiff's motion to amend. ECF No. 14-1 at 4.

## III.     Events Following the Amended Complaint

On August 22, 2025, still having received no response from the Defendant, the Plaintiff filed a Request for Entry of Default in state court. ECF No. 14-1 at 4. On August 28, 2025, Defendant's counsel called Plaintiff's counsel and identified himself as counsel for the Defendant, discussed removing the case based on diversity jurisdiction, and asked

---

[3] The Defendant attests the June 18, 2025, mailing was the first communication she was aware of regarding the Plaintiff's complaint against her. Specifically, she stated that she opened the envelope containing the motion to amend and amended complaint "because it was clearly from a law firm" and "thought it might be important." ECF No. 16-1 at 2.

to file a late answer in state court. *Id.* On September 5, 2025, the state court clerk entered a judgment of default against the Defendant. *Id.* at 5. The same day, the Defendant opened the Facebook message from Plaintiff's counsel at the instruction of her counsel. ECF No. 16-1 at 2. On September 8, 2025, the Defendant filed a motion to set aside default judgment in state court. ECF No. 14-1 at 5. On September 11, 2025, the Defendant filed a notice of removal of the case in federal court. *Id.*; *see* ECF No. 1. The Defendant filed her notice of removal to federals court more than fourteen months after the Plaintiff filed the original complaint, on July 27, 2024.

The Plaintiff alleges the Defendant's removal to federal court on September 12, 2025, was in violation of both the thirty-day deadline for removal established in 28 U.S.C. § 1446(b)(3), *see* ECF No. 14 at 1, and the one-year deadline established in 28 U.S.C. § 1446(c)(1), *see* ECF No. 15 at 1. Accordingly, the Plaintiff requests an award of $6,000 in attorneys' fees and costs, arguing the Defendant's removal lacked any objectively reasonable basis. ECF No. 14 at 3.

## DISCUSSION

"Under Federal Rule of Civil Procedure 4(e), service may be accomplished by delivering a copy of the summons and the complaint to the individual personally, leaving a copy at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, [or] delivering a copy to an agent authorized by appointment or by law to receive service of process." *U.S. Bank Tr. Nat'l Ass'n v. Folsom*, No. 1:24-cv-00412, 2025 WL 987732, at *1 (D. Me. Apr. 2, 2025); *see* Fed. R. Civ. P. 4(e)(2). Maine additionally allows alternate service to be made "by leaving a copy of the order authorizing service by alternate means, the summons, complaint, and notice regarding Electronic Service at the defendant's dwelling house or usual place of abode,"

4

"by publication unless a statute provides another method of notice," or "electronically or by any other means not prohibited by law." Me. R. Civ. P. 4(g)(1).

When a defendant challenges the sufficiency of service, the plaintiff carries the ultimate burden of proving that service was proper. *Lopez v. Orange Lantern, Inc.*, 792 F. Supp. 3d 202, 208 (D. Mass. 2025) (quoting *Blair v. City of Worcester*, 522 F.3d 105, 112 (1st Cir. 2008)). The plaintiff's burden "cannot be satisfied by a mere showing of actual notice on the defendant's part." *Curley v. Radow*, CV No. 00-10956, 2007 WL 2060015, at *4 (D. Mass. July 16, 2007). Generally, a return of service constitutes prima facie evidence of sufficient performance, provided the language of the return establishes proper service under Federal Rule of Civil Procedure 4. *Lopez*, 792 F. Supp. 3d at 208. (quotation modified). However, the "presumption of proper service is not insurmountable." *Carrasquillo-Serrano v. Mun. of Canovanas*, 991 F.3d 32, 41 (1st Cir. 2021). For example, "an affidavit is sufficient to refute the prima facie presumption created by a return of service." *Blair*, 522 F.3d at 112 (finding presumption of service was overcome by affidavit stating parties who received service were not authorized to accept service on behalf of defendant).

### I.     Thirty-Day Removal Deadline

Under 28 U.S.C. § 1446(b)(3), "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Here, the parties do not dispute that the amended complaint was the first document to explicitly establish grounds for removal. *See* ECF No. 14 at 4; ECF No. 16 at 7. Although the Defendant acknowledges she received a copy of the motion to amend

the complaint on June 18, 2025, she states the Plaintiff did not provide confirmation that the motion to amend had been granted or that the amended complaint was now the operative pleading. ECF No. 16 at 7–8.

However, the record demonstrates that service was not effected—and thus the thirty-day deadline did not begin—until September 5, 2025, the date the Defendant opened the Facebook message from Plaintiff's counsel.

Regarding service via Facebook, the Plaintiff has provided no evidence that the Defendant received and viewed the Facebook message prior to September 5, 2025. Although Facebook Messenger provides "read receipts" when a message is opened, *see id.* at 4–5; ECF No. 16-3, the Plaintiff failed to produce such proof—despite the state court's alternate service order specifically requiring screenshots documenting "if available, receipt of the message." *See* ECF No. 14-2 at 2. Accordingly, the Plaintiff has failed to carry the "ultimate burden of proving proper service" with respect to the April 18, 2025, Facebook message. *Lopez*, 792 F. Supp. 3d at 208 (quoting *Blair*, 522 F.3d at 11).

Turning next to the June 18, 2025, mailing to the Defendant's New York address, the evidence establishes the Plaintiff failed to include a copy of the summons alongside the motion to amend and amended complaint. This omission is fatal to the sufficiency of the service. A "defendant's time to remove [under 28 U.S.C. § 1446] is triggered by simultaneous service *of the summons and complaint*, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) (emphasis added). Additionally, both applicable federal and state rules governing service of process require the delivery of both the complaint and the summons to fully effect service. *See* Fed. R. Civ.

6

P. 4(e); Me. R. Civ. P. 4(d) ("The summons, complaint, and notice regarding Electronic Service shall be served together.").

Accordingly, service was not effected until September 5, 2025, when the Defendant opened the Facebook message from Plaintiff's counsel. As of that date, the Defendant and her counsel were in possession of the summons, original complaint, and the amended complaint. The Defendant's removal on September 12, 2025, a mere one week later, was therefore timely under the thirty-day deadline for removal after the receipt of an initial pleading as found in 28 USC § 1446(b).

## II. One-Year Removal Deadline

Under 28 U.S.C. § 1446(c)(1), a "case may not be removed . . . on the basis of [diversity] jurisdiction . . . more than [one] year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." To assess bad faith, courts consider whether a plaintiff engaged in "strategic gamesmanship to prevent a defendant's removal from state court." *Aroostook Cnty. Fed. Sav. & Loan v. Marrett*, No. 23-cv-00006, 2023 WL 2868144, at *3 (D. Me. Apr. 10, 2023) (quoting *Ehrenreich v. Black*, 994 F. Supp. 2d 284, 288 (E.D.N.Y. 2014)). The dispositive question is whether the plaintiff "engag[ed] in intentional conduct—action or inaction—to defeat removal." *In re Zofran (Ondansetron) Prods. Liab. Litig.*, No. 19-cv-10647, 2019 WL 2491587, at *4 (D. Mass. June 13, 2019). The bad faith inquiry carries a high bar: "the defendant bears the burden of proving a plaintiff's bad faith conduct by clear and convincing evidence." *Elliot v. Jaquez*, 777 F. Supp. 3d 136, 152 (E.D.N.Y. 2025) (quotation omitted).

The Defendant argues the Court may infer bad faith on the part of the Plaintiff for a myriad of reasons, primarily the Plaintiff's repeated and failed attempts at service of his

7

original complaint at incorrect work and home addresses for the Defendant, the unreliability of service via Facebook, and his "conspicuously timed" motion to amend, which explicitly established diversity jurisdiction and thus grounds for removal. ECF No. 16 at 11–14. The Plaintiff argues the record demonstrates "normal litigation activities" and no inference of bad faith, citing his "diligent service attempts" between December 2024 and March 2025 and his request for alternate service in state court in March 2025. ECF No. 15 at 2–3. Regarding the timing of his amended complaint, the Plaintiff argues his "pro se complaint required professional revision" and that the amended complaint was necessary to "cure pleading deficiencies" in the original, pro se complaint. *Id*. at 4–5.

On the record before me, I find the Defendant has not established the Plaintiff's bad faith by clear and convincing evidence. First, the record supports the Plaintiff's claims regarding his multiple attempts at service of his original complaint. *See* ECF No. 14-1 at 1–2 (detailing Plaintiff counsel's efforts at service at multiple addresses between December 2024 and March 2025). Additionally, although ultimately unsuccessful, the Plaintiff's request for alternate service via Facebook supports an inference of good faith in attempting to serve the Defendant. *See* ECF No. 14-2.

Furthermore, while the timing of the Plaintiff's motion to amend his complaint is notable, the issue of timing alone does not support a finding, by clear and convincing evidence, that the Plaintiff engaged in the type of "strategic gamesmanship" required to trigger the bad-faith exception. *See Marrett*, 2023 WL 2868144, at *3. Although the amended complaint was the first pleading to explicitly state the grounds for federal diversity jurisdiction, the Plaintiff's original complaint did not affirmatively attempt to conceal or obscure those grounds.

Specifically, the face of the original pro se complaint identified that the Plaintiff was a Maine resident and was: (1) suing his daughter, Ms. Nadia Liyanage-Don, (2) in the amount of $145,717.25. ECF No. 1-2 at 5. In comparison, the amended complaint sought total damages of $198,156.66 and identified the same parties to the suit—but explicitly identified the Plaintiff as a resident of Maine and the Defendant as a resident of New York. ECF No. 1-1 at 1, 5–6. The only discernible, relevant difference between the two pleadings was the explicit mention of the Defendant's residence. The language of the original complaint thus allowed the Court, and the Defendant, to "intelligently ascertain removability" of the plaintiff's complaint to federal court. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001) (quotation modified) (concluding "any defendant with reasonable intelligence and with 'some investigation' could have ascertained federal diversity jurisdiction and hence, removability from the face of that document"). Here, further investigation was not even necessary as the Defendant was undoubtedly aware of her own New York residency. When paired with the Plaintiff's Maine residency disclosure on the face of the original complaint, the facts establishing complete diversity were readily apparent to the Defendant from the inception of the suit.

This case is thus a far cry from cases where federal courts have found bad faith based upon a plaintiff's deliberate action (or inaction) to prevent removal to federal court. *See, e.g.*, *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 292 (5th Cir. 2019) (finding of bad faith was not clearly erroneous where plaintiffs dismissed non-diverse defendant "a mere two days" after one-year deadline expired); *McNeal v. Found. Radiology Grp., PC*, 636 F. Supp. 3d 794, 797 (E.D. Mich. 2022) (finding bad faith where plaintiff waited until three months following one-year removal deadline to dismiss nondiverse defendants "with no coherent explanation"). Here, nothing has changed from the Plaintiff's pro se complaint

9

to his amended complaint which would ultimately alter this Court's removability determination.[4] Based on the record before me, the Defendant cannot establish the Plaintiff's bad faith or "strategic gamesmanship" to by clear and convincing evidence.[5] Accordingly, the Defendant's notice of removal is untimely under the one-year deadline provision contained in 28 USC § 1446(c)(1).

### III.  Attorneys' Fees

An order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005) (quotation modified). "An award of fees pursuant to [§] 1447 is committed to the sound discretion of the district court." *Scotiabank de P.R. v. Halais-Borges*, 350 F. Supp. 3d 39, 41 (D.P.R. 2018). Additionally, "[b]ad faith is not a necessary condition" for an award of attorneys' fees and costs under the statute. *Net 2 Press, Inc. v. Nat'l Graphic Supply Corp.*, 324 F. Supp. 2d 15, 19 (D. Me. 2004).

The Defendant removed this case on the theory that her September 12, 2025, removal was timely both because: (1) service was not effected until September 5, 2025, via Facebook message, and (2) the timing of the Plaintiff's amendment supported a

---

[4] Considering both that the "deficiency" in the Plaintiff's pro se complaint was technical rather than substantive, and this Court's duty to liberally construe pro se pleadings, *see Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 75 (1st Cir. 2014), the Plaintiff's initial pro se status further weighs against a finding of any concealment or bad faith.

[5] The fact that the Defendant was not properly served until September 5, 2025, while unfortunate, without further evidence of the Plaintiff's purposeful conduct, does not amount to a finding of bad faith on the part of the plaintiff. *See Madeira Condo. Ass'n, Inc. v. Chubb Custom Ins. Co.*, 785 F. Supp. 3d 1153, 1156–57 (M.D. Fla. 2025) (finding no bad faith by plaintiff where defendant was not served process until after expiration of one-year deadline where plaintiff had attempted to serve defendant prior to one-year deadline). Here, I find the Plaintiff's attempts at service of original complaint well before the one-year deadline further negate against a finding of bad faith.

finding of bad faith. *See* ECF No. 16 at 8, 13–14. As described above, the Defendant's removal was timely under the thirty-day deadline in 28 U.S.C. § 1446(b)(3), supporting the reasonableness of the first aspect of the Defendant's removal theory. Regarding the bad faith exception, while I find the Defendant did not meet her burden of establishing the Plaintiff's bad faith by clear and convincing evidence, her argument for removal was still objectively reasonable. Accordingly, I deny the Plaintiff's requests for attorneys' fees and costs incurred as a result of the Defendant's removal.

## CONCLUSION

For the foregoing reasons, the Plaintiff's motion, ECF No. 14, is **GRANTED IN PART** with respect to remanding the case to state court and **DENIED IN PART** with respect to the award of attorneys' fees.

**SO ORDERED.**

Dated this 9th day of February, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**